UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

IN RE:

**JAMES LEE SIMPSON,**              Chapter 12 Proceeding

**Debtor.**                          Case No. 15-40012-KKS

---

**OBJECTION OF CREDITOR, JOHN T. BELL, TO DEBTOR'S FIRST AMENDED CHAPTER 12 PLAN (Doc. 27) WITH INCORPORATED MEMORANDUM OF LAW**

---

Creditor, JOHN T. BELL, herein "Bell", by and through his undersigned lawyer and pursuant to 11 U.S.C. §122(b)(3) and (5), 11 U.S.C. §1225(a)(3) and (6), Fed. R. Bankr. P. 3015(f), and N.D. Fla LBR 2015-1(F) and (G) and 2028-1, files this objection to the First Amended Chapter 12 Plan ("Plan") [Doc. No. 27] of the Debtor, JAMES LEE SIMPSON ("Debtor") and as grounds therefor, states:

### Introduction

1.      11 U.S.C. §1225(a)(3) and (6) require that a Chapter 12 Plan: (a) be proposed in good faith and (5) The debtor must be able to make all payments and comply with the terms of the plan. The Debtor's proposed Plan fails to meet these requisites.

2.      The Debtor filed his Plan in response to foreclosure proceedings by Creditors Terry and Marie Taylor just prior to the foreclosure sale. The Debtor previously filed a Chapter 12 proceeding (Case No. 13-40125-KKS) in response to the same foreclosure proceeding. That filing was subsequently dismissed.

3.      The Debtor also filed an earlier Chapter 12 proceeding. (Case No. 02-71381) to defeat the Taylor's same collection actions.

1

4.      Bell provided Debtor with the funds to bring the mortgage to the Taylors current in the Debtor's prior Chapter 12 Filing (Case No. 02-71381-LMK). No other payments have been made on that mortgage through the course of the additional Chapter filings to date.

5.      In Case No. 13-40125, the Debtor valued the property subject to foreclosure, known as 2926 Salem Road, Havana, Florida, ("the Property") at $650,000.00. (Doc. 17, Case No. 13-40125). He now values the Property at $400,000.00. [Doc. 27] (Case No. 15-40012) after this Court denied Debtor's Motion to Determine Validity of Lien and held that Bell's second mortgage is a valid lien. [Doc. 109] (Case No. 13-40125).

6.      Debtor filed this Chapter 12 Plan [Doc. No. 27] which is currently set for preliminary hearing before the Court on May 14, 2015. [Doc. 18].

7.      Debtor does not have the ability to satisfy the Plan payments.

A.     **Debtor's Chapter 12 Petition and Plan are Filed in Bad Faith**

8.      Section 1225(a)(3) provides that the Court shall confirm a plan if "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. §1225(a)(3). The Court looks to "the totality of the circumstances" of the filing to determine good faith. In re Carter, 165 B.R. 518,523 (Bankr. M.D. Fla 1994) (citing In re Kitchens, 702 F.2d 885 (11th Cir. 1983)).

9.      Debtor's Amended Schedule B (13) [Doc. 10] states that:

-       Debtor has both a 1/3 and a ½ interest in Watt Miser, LLC. (No such entity exists, although there is a "Watt Mizer" LLC registered with the State of Florida. However, the 2012 and 2013 tax returns for Watt Mizer (Schedules K-1) produced by Debtor show James Simpson is the 100% shareholder.

-       Debtor "owns and d/b/a Havana Sod & Pallet, LLC." However, this entity does not exist in the public records of the State of Florida. The entity known as Havana Sod & Pallet, Inc., was dissolved in September 2010. Debtor does not separately value this entity, but the Profit and Loss Statements produced for "Havana Sod & Pallet" by Debtor demonstrate that this entity has extensive losses for 2013 and 2014.

2

- Havana Sod & Pallet, LLC (or Watt Mizer) owns the equipment used in the sod farm production, but the Debtor does not provide for equipment payments.

- Debtor testified during his 341 meeting that Watt Mizer operates and does business as Havana Sod & Pallet, but there is no fictitious name registered for such activity.

- Debtor testified during his 341 meeting that the sole proprietorship "Topos Theos Sod Farm" actually performs the sod farming. There is no fictitious name registration for Topos Theos. The financial documents produced by Debtor show that Topos Theos is owed money for the sod production, but is not listed as a Creditor. Debtor lists it as an asset valued at $100.00.

- Debtor testified in his 341 meeting that the property upon which the sod farming is performed is leased from him, but there is no lease, nor are there any lease payments disclosed on Schedule I. [Doc. 10].

10. Debtor's Schedule B lists entities that do not exist, fictitious names that are not documented in the public records and Debtor's minimized ownership interest in Watt Mizer is contradicted by Debtor's Federal income tax returns.

11. Debtor's Schedule I projects a <u>net</u> income to Debtor of $8,500.00 per month from the sod business, but not a single document produced by Debtor supports the stated $8,500.00 <u>net</u> income to fund the Plan.

12. The income and expenses set forth in Schedules I and J respectively, show the Debtor does not have sufficient funds to pay the Taylors, nor does the Debtor have funds to pay Bell or other creditors because the net income is not supported. The net income is completely contradicted by the documents produced by Debtor.

13. The Monthly Cash Receipts and Disbursement Statements filed by the Debtor [Doc. Nos. 31, 32 and 33] demonstrate that despite Debtor's interest in multiple entities related to the sod business those businesses do not presently produce income to Debtor. Debtor's only income is from Social Security ($1,000.00 per month), which is insufficient to pay the $4,000.00 monthly personal expenses in Schedule J and is clearly insufficient to pay the secured creditors. Similarly, the Monthly Cash Receipts and Disbursement Statements filed in Debtor's prior Chapter 12 cases

[Docs: 24, 59, 60, 61, 62, 63] also only showed social security as Debtor's sole source of income. Debtor has not documented income necessary to support the Plan.

14. Debtor knew, based upon his prior income, that his current and projected income listed in Schedule I was effectively impossible to achieve and was therefore presented to the Court in bad faith.

15. Debtor's Amended Schedules set forth a single bank account at Tallahassee State Bank. However, the 2014 Profit & Loss through 12/31/14 for Havana Sod & Farm produced by Debtor, shows Debtor held or controlled accounts at Tallahassee State Bank, Capital City Bank and Focus Credit Union from which Debtor has drawn funds to pay sod farm costs and expenses. Debtor did not list these accounts in Schedule B. [Doc. 10]. Debtor did not include these accounts in the Plan's liquidation analysis.

**B.    Debtor is not entitled to Chapter 12 relief.**

16. A Debtor must be "a family farmer or family fisherman with regular annual income," 11 .S.C. §109(f), sufficient to enable such family farmer to make payments under a Chapter 12 Plan.

17. No factual predicate for the sufficiency of such annual income has been set forth by Debtor. The information before the Court demonstrates the contrary.

**C.    Debtor's Chapter 12 Plan is Not Feasible**

18. The Plan proposed by Debtor fails to satisfy the feasibility requirement of 11 U.S.C. §1225(a)(6). Section 1225(a)(6) of the Bankruptcy Code, requires the Court to confirm a plan if "the debtor will be able to make all payments under the plan and to comply with the plan" 11 U.S.C. §1225(a)(6). This "feasibility test" addresses the probability of the debtor's making all payments under the plan. In re Hand, 2010 WL 745624 at *6 (Bankr. M.D. Fla. 2010 (citations omitted). The Debtor is unable to establish a "reasonable probability of success". Id; see also In re Kollar, 357 B.R. 657, 660 (Bankr. M.D. Fla 2006).

19. The Debtor's Monthly Cash Receipts & Disbursement Statements [Docs. 31, 32, and 38] demonstrate the Plan is not feasible. The 2012 and 2013 Federal Income Tax Returns for Watt Mizer show net income in 2012 of $12,208 and a loss in 2013 of $9,305.00.

The 2012 Federal Income Tax Return for James Simpson shows income of:

| | |
|---|---|
| $12,208 | from Watt Mizer |
| $14,589 | Farm Income |
| $12,415 | Social Security |
| $39,222 | Total income all sources |

but shows a net operating loss as a sod farmer of $241,056.00.

The 2013 Federal Income Tax Return for James Simpson shows income of:

| | |
|---|---|
| -$9,805 | from Watt Mizer |
| $13,914 | from Farm Income |
| $12,626 | from Social Security |
| $16,735 | Total income all sources |

but shows a net operating loss of $218,280.00.

There is no other information before the Court to show an ability to make the payments, to show Debtor's financial condition can support the Plan or that Debtor has property or other assets sufficient to satisfy creditors.

**D.  Specific Objections to Debtor's Chapter 12 Plan**

20. Bell objects to the Chapter 12 Plan because payments to him, as addressed in the Plan, only provide annual payments, but Debtor's records demonstrate there are not sufficient funds to pay the priority claims or the fully secured creditor or Bell.

Bell further objects to the Plan because Debtor has failed to list the indebtedness to Bell which is the subject of stayed litigation in *John T. Bell v. James L. Simpson,* Case No. 2014 CA 001021, 2nd Circuit, Leon County Court, and the subject of Bell's Proof of Claim. [Register 3].

21.     The Plan does not identify any "allowed unsecured claims" and Debtor has not objected to Bell's claim(s). However, the Plan proposes to utilize disposable income for payment of "allowed" unsecured claims after payment of priority and secured claims and Debtor's business expenses of $36,000 per year. However, Debtor has not provided any information to the Court demonstrating an ability to pay any of the priority and secured claims of these business expenses, nor is there any information demonstrating that any payments will be made to unsecured creditors.

22.     If annual payments are permitted as set forth in the Plan, then the secured creditors are again subject to allowing the Debtor to continue business using the security and collateral to receive income while exposing these creditors to non-payment at the end of the year. These creditors have no interim protection while awaiting an annual payment that according to Debtor's own documents will never be feasible or forthcoming.

WHEREFORE, the Creditor, John T. Bell, hereby requests that the Plan [Doc. No. 27] filed by Debtor, James Lee Simpson, not be confirmed because it was not proposed in good faith and is not otherwise feasible.

Respectfully submitted, this ____ day of May, 2015.

Albert C. Penson
Florida Bar # 334510
Penson Law Firm, P.A.
2810 Remington Green Circle
Tallahassee, FL 32302
Telephone: (850) 561-8000
Facsimile: (850) 561-8030
Primary Email: acp@pendd.com
Secondary Email: gdc@pendd.com
Attorney for Creditor, John Bell

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served electronically via the CM/ECF System to those registered thereto in the above-styled bankruptcy

matter and all parties listed as follows:  Allen P. Turnage, Esq., (service@turnagelaw.com); Walter Kelley, Chapter 12 Trustee, (dcannon@kelleylovett.com), wkelley12fl@ecf.epiqsystems.com, and hisdell@kelleylovett.com); Kevin A. Forsthoefel, Esq. (kforsthoefel@ausley.com); (jmiller@ausley.com); James M. Donohue, Esq., (jdonohue@ausley.com); (sshaffer@ausley.com); and United States Trustee, (USTPRegion21.TL.ECF@usdoj.gov), and via First Class U. S. Mail to the Debtor, James L. Simpson, 2926 Salem Road, Havana, Florida 32333, on this  6TH  day of May, 2015.

/s/ Albert C. Penson